MOORE, J.
I,One of the plaintiffs, David Leija, appeals a judgment sustaining Ford Motor Company’s and Hixson Autoplex of Monroe’s exceptions of.prescription and dismissing his redhibition claim. We affirm.

Factual and Procedural Background

According to the petition, Barnaby Martinez bought a truck, a 2004 Ford F-250 4x4 crew cab, with an enhanced engine, a Harley-Davidson Special Edition Power-stroke Diesel, in March 2005. In 2008, he “started having problems” with the engine in that it would “surge to high rpms” and he would have to stomp on the brake with both feet to prevent it from lurching into other vehicles. He asked his brother-in-law, David Leija, who is also a part-time mechanic, to take it to a Ford dealer. Leija took it to Hixson in July 2008.
At that time, Hixson replaced the EGR valve and injector and told Leija the problem was fixed. Some 5,000 miles later, however, the same problem resurfaced. Martinez brought the truck back to Hixson several times; they told him the warranty would take care of it. According to the petition, Hixson kept the truck for days or weeks at a time, and once kept it for a month. Martinez got irritated with all this and sold the truck to Leija in May 2011. Again according to the petition, Leija “was familiar with the problems the vehicle had been having[.]” Leija testified by affidavit that in February 2012, the people at Hix-son told him they “could not fix the problem,” and he last took the truck there in June 2012. At that time, they told him the truck was now out of warranty and that repairs would cost about $3,000. This was the final time Leija or Martinez presented the truck 12to Hixson for repairs.
Even though Martinez no longer owned the truck, on September 17, 2012, his lawyer wrote a letter to Ford Motor Credit, outlining the problems and demanding repairs. The letter concluded that unless he heard from Ford Motor Credit within 10 days, “we will have no alternative but to proceed with legal action.”[1] Ford Motor Company’s counsel responded on October 25, 2012, asking for specific documentation (current vehicle registration, repair orders, etc.), whereupon “a review of your client’s claim will begin,” and advising that under “your state’s lemon law,” Ford must be given the opportunity to repair the truck under its warranty. This was the final communication from Ford to Leija, Martinez or their counsel.
On November 5, Martinez’s lawyer sent some of the requested information, but Ford did not respond. He followed up with an email on February 12, 2013, and letters on March 18 and May 29, none of which were answered. Leija was not copied with any of these communications.
On August 26, 2013, Leija and Martinez filed this suit in redhibition, naming Ford and Hixson as defendants. Although both defendants moved for extensions of time to answer, and received until October 7 and 11 respectively, the plaintiffs took a preliminary default and set a confirmation hearing on September 19. At this hearing, Leija testified, setting out many of the facts outlined above, and offered a recent *1023 repair estimate.[2] The district court asked for proof that the truck was still in warranty and 13recessed the hearing. The following day, September 20, Leija returned to court with an affidavit but no warranty. The court again asked for proof of warranty and stated it would hold the record open for the plaintiffs to file that evidence. Before this occurred, however, Ford and Hix-son filed exceptions of prescription. The district court denied the default judgment by minute entry.
The exceptions of prescription urged that under La. C.C. art. 2534 A(l), an action in redhibition prescribes four years from the delivery of the thing or one year after the buyer discovered the defect, whichever occurs first. Martinez bought the truck in March 2005; Leija bought it in May 2011, with full knowledge of the defect, so the suit filed in August 2013 was prescribed on its face.

Action in the District Court

At a hearing in March 2014, the plaintiffs (now represented by new counsel) asserted that the truck was a total lemon, in that Hixson had it more than Martinez did; in June 2012, Hixson told Leija it was now out of warranty; Leija tried to buy an extended warranty and continued trying until November 2012, but nobody would return his calls. They argued that under Art. 2534 C, prescription was interrupted while Hixson was trying to repair the truck, and did not start to run again until Hixson advised that it would not make the repairs.
Hixson argued that after June 2012, all the plaintiffs’ communications were with Ford, not with Hixson, and Ford argued that neither it nor Hixson attempted any repairs after June 2012, so the one-year prescription began to |4run from that date. Ford also argued that it did not waive prescription by “having talks” with the plaintiffs.[3]
The district court ruled that under Art. 2534 C, prescription ran from the date of last repair, June 2012, ending in June 2013; the suit, filed in August 2013, was two months too late. The court also held that the communications between Ford and Martinez’s counsel did not interrupt prescription. Judgment was rendered dismissing all claims.

Discussion

Leija alone has appealed, urging the district court erred in sustaining the exceptions of prescription. He argues that under La. C.C. art. 2534 C, when the seller accepts the thing for repairs, prescription does not start to run anew until “the day he tenders it back and notifies the buyer of his refusal or inability to make the repairs.” Leija contends that of the email and letters that Ford and Martinez exchanged between September 17, 2012, and May 29, 2013, none ever notified the buyer that Ford refused or was unable to make the repairs; hence, prescription never began to run. He also argues that the seller may waive prescription by conduct that expressly or tacitly acknowledges the owner’s right, such as an offer to pay for damages. Demma v. Automobile Club Inter-Ins. Exch., 2008-2810 (La.6/26/09), 15 So.3d 95. He contends that Hixson’s conduct in performing work on the 2004 truck until June 2012, long after any warranty would have expired, tacitly admitted the buyer’s right to seek redhibition. Finally, he urges that ^Ford’s October 2012 re *1024 quest for additional information “lulled” him into thinking Ford was going to repair the truck. He concludes that the exceptions of prescription should be overruled.
The time limit for filing an action in redhibition is fixed by La. C.C. art. 2534, which provides in pertinent part:
Art. 2534. Prescription
A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
[[Image here]]
C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.
 In short, when there is no allegation that the seller knew of the defect, the prescriptive period for the action in redhi-bition is four years from delivery of the thing or one year from discovery of the defect, whichever comes first. Derivas v. Falbaum, 43,945 (La.App. 2 Cir. 1/28/09), 2 So.3d 1236; Nolan v. Roofing Supply Inc., 36,403 (La.App. 2 Cir. 11/26/02), 833 So.2d 1026. Generally, the party urging the exception of prescription (usually the defendant) has the burden of proving facts to support the exception, but when prescription is evident on the face of the petition, the burden shifts to the plaintiff. Duckworth v. Louisiana Farm Bureau Mut. Ins. Co., 2011-2835 (La.11/2/12), 125 So.3d 1057; Blake v. Maley, 46,036 (La.App. 2 Cir. 1/26/11), 57 So.3d 1122, writ denied, 2011-0602 (La.4/29/11), 62 So.3d 114, cert. denied, — U.S.-, 132 S.Ct. 189, 181 L.Ed.2d 97 (2011). When | ñthe trial court hears evidence on the exception of prescription, its findings of fact are subject to the manifest error-plainly wrong standard of review. Specialized Loan Servicing v. January, 2012-2668 (La.6/28/13), 119 So.3d 582; Taylor v. Broomfield, 46,590 (La.App. 2 Cir. 9/21/11), 73 So.3d 485.
The petition easily shows that this action is prescribed on its face. The plaintiffs filed suit on August 26, 2013, well over one year after they discovered the defect in July 2008 and 14 months after the last repair, or attempted repair, by Hixson in June 2012. On this record, the district court was not plainly wrong to shift the burden to the plaintiffs to show an interruption or suspension of prescription.
Prescription is interrupted “when one acknowledges the right of the person against whom he had commenced to prescribe.” La. C.C. art. 3464. An acknowledgment is a simple admission of liability resulting in the interruption of prescription that has begun to run but has not yet accrued. Demma v. Automobile Club, supra. Tacit acknowledgment occurs when the debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability; however, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims do not constitute acknowledgment. Id., citing Lima v. Schmidt, 595 So.2d 624 (La.1992); Crain v. Pletka, 35,636 (La.App. 2 Cir. 1/23/02), 806 So.2d 950.
On close review, this record does not support a finding that any of Ford’s or Hixson’s conduct amounted to tacit acknowledgment. Hixson |7may well have performed “warranty work” on the truck long after any normal warranty, but in June 2012 Hixson advised Leija that the warranty had expired and any additional work would be not covered. This clearly *1025 terminated Hixson’s ongoing recognition of liability. Moreover, Ford’s final email, October 25, 2012, asked for specific information with which to evaluate the claim. This was a mere recognition, not acknowledgment, of Martinez’s claim. Martinez’s counsel sent subsequent email and letters to Ford, but Ford’s total silence cannot possibly be construed as an acknowledgment. The courts have always favored compromise of disputes and thus been unwilling to treat settlement discussions as acknowledgments of liability. Crain v. Pletka, supra; Waller v. Stuckey, 613 So.2d 643 (La.App. 2 Cir.), writ denied, 618 So.2d 409 (1993); St. Romain v. Lambert, 521 So.2d 618 (La.App. 1 Cir.1988). Moreover, there was nothing in Hixson’s sudden refusal to perform warranty work or in Ford’s request for information that would mislead the plaintiffs into thinking their claim would be paid. In short, the court’s finding that there was no interruption of prescription is not plainly wrong.

Conclusion

The judgment sustaining the exceptions of prescription is affirmed. Appellate costs are to be paid by David Leija.
AFFIRMED.

. Although counsel’s letter was addressed to Ford Motor Credit, Ford Motor Company sent the response.

. The estimate, from a Ford dealer in Bossier City, was for a complete engine replacement at $16,215.

. Ford also disputed the contention that the truck was so defective that the plaintiffs hardly got to use it: according to counsel's letter of November 5, 2012, the current mileage was 124,000. ,.